Rosemary M. Rivas (State Bar No. 209147)
Email: rrivas@zlk.com
**LEVI & KORSINSKY LLP**
44 Montgomery Street, Suite 650
San Francisco, California 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

*Counsel for Plaintiff Steven DePalo*

[Additional Counsel listed on signature block.]

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN DEPALO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>XACTLY CORP., CHRISTOPHER W. CABRERA, GERALD S. CASILLI, NEAL DEMPSEY, LAUREN FLAHERTY, EARL E. FRY, SCOTT MCGREGOR, CAROL MILLS, DAVID W. PIDWELL, JOHN P. WARD,<br><br>Defendants. | Case No. 5:17-cv-03838<br><br>**<u>CLASS ACTION</u>**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Steven DePalo ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

## <u>INTRODUCTION</u>

1.      Plaintiff brings this action on behalf of himself and the public stockholders of Xactly Corporation ("Xactly" or the "Company") against Xactly and Xactly's Board of Directors (the "Board" or the "Individual Defendants," as further defined below, and collectively "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9, arising out of their attempt to sell the Company to affiliates of Vista Equity Partners Management, LLC ("Vista").

2.     On May 30, 2017, Vista and the Company announced that they had entered into a definitive agreement on May 29, 2017 ("Merger Agreement"), under which Excalibur Parent, LLC ("Parent"), through its wholly owned subsidiary, Excalibur Merger Sub, Inc. ("Merger Sub"), will acquire all of the outstanding shares of Xactly in an all-cash transaction (the "Proposed Transaction"). If consummated, Xactly stockholders will receive $15.65 in cash for each share of Xactly common stock that they own ("Merger Consideration").   The Proposed Transaction has a total value of approximately $564 million.

3.     On June 16, 2017, Defendants issued materially incomplete and misleading disclosures in the Form PREM14A Preliminary Proxy Statement (the "Proxy") filed with the SEC in connection with the Proposed Transaction.

4.     The Proxy is deficient and misleading because, *inter alia*, it fails to disclose material information regarding GAAP reconciliation of the non-GAAP financial measures contained in the Company's projections, which were prepared by Company management and relied upon by J.P. Morgan Securities, LLC ("J.P. Morgan"), the Company's financial advisor, who used such information to support its opinion on the fairness of the Proposed Transaction.

5.     The Proxy is also deficient and misleading because it fails to provide adequate disclosure of all material information relating to whether the confidentiality agreements Xactly entered into contained standstill provisions, and fails to provide information pertaining to Vista's communications with anyone at Xactly concerning the possible continued employment of any Xactly officer, director, or employee following the Merger, including but not limited to the timing, content, nature, parties, and form of such communications.

6.     Without additional information the Proxy is materially misleading and in violation of federal securities laws.

7.     By unanimously approving the Proposed Transaction and authorizing the issuance of the Proxy, the Individual Defendants participated in the solicitation even though they knew, or should have known, that the Proxy was materially false and/or misleading.

8.     Accordingly, Plaintiff alleges herein that Defendants have breached their fiduciary duties and violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 in connection with

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE
SECURITIES EXCHANGE ACT OF 1934

the Proxy. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to Xactly's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from Defendants' violations of federal securities laws and regulations.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331-32, pursuant to 15 U.S.C. § 78aa (federal question jurisdiction), as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

10.     The Court has personal jurisdiction over each Defendant because each either conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because: (a) Xactly is headquartered in this District; (b) a substantial portion of the corporate transactions and wrongs complained of herein occurred here; and (c) Defendants have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect in this District.

## PARTIES

12.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Xactly.

13.     Xactly is a corporation organized and existing under the laws of the State of Delaware. The Company maintains its principal executive offices at 300 Park Avenue, #1700, San Jose, California, 95110. Xactly common stock trades on the New York Stock Exchange under the ticker symbol "XTLY."

14.     Defendant Christopher W. Cabrera ("Cabrera") has been Chief Executive Officer and a director of the Company since March 2005.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE
SECURITIES EXCHANGE ACT OF 1934

15. Defendant Gerald S. Casilli ("Casilli") has been a director of the Company since August 2005.

16. Defendant Neil Dempsey ("Dempsey") has been a director of the Company since April 2008.

17. Defendant Lauren P. Flaherty ("Flaherty") has served as a director of the Company since March 2016.

18. Defendant Earl E. Fry ("Fry") has been a director of the Company since September 2005.

19. Defendant Scott McGregor ("McGregor") has been a director of the Company since March 2016.

20. Defendant Carol G. Mills ("Mills") has served as a director of the Company and Chair of the Board since February 2010.

21. Defendant David Pidwell ("Pidwell") was a director of the Company from September 2005 through June 20, 2017.

22. Defendant John P. Ward ("Ward") was a director of the Company from January 2009 through June 20, 2017.

23. Defendants Cabrera, Casilli, Dempsey, Flaherty, Fry, McGregor, Mills, Pidwell, and Ward are collectively referred to as "Individual Defendants" and/or the "Board."

24. Relevant non-party Parent is an affiliate of Vista that was formed on May 25, 2017. Parent was created solely for the purposes of effectuating the Proposed Transaction.

25. Relevant non-party Merger Sub is a Delaware corporation and wholly-owned subsidiary of Parent that was created for the purposes of effectuating the Proposed Transaction.

26. Relevant non-party Vista Fund VI has provided Parent with an equity commitment to fund the aggregate purchase price, fees, and expenses to be paid at the closing of the Merger.

## CLASS ACTION ALLEGATIONS

27. For purposes of the breach of fiduciary duties claims, Plaintiff brings this action individually and as a class action on behalf of all holders of Xactly stock who are being, and will be, harmed by Defendants' actions described herein (the "Class"). Excluded from the Class are Defendants

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934

1  herein and any person, firm, trust, corporation, or other entity related to, controlled by, or affiliated
2  with, any Defendant, including the immediate family members of the Individual Defendants.

3  28.    This action is properly maintainable as a class action under Federal Rule of Civil
4  Procedure 23.

5  29.    The Class is so numerous that joinder of all members is impracticable.  According to the
6  Company's Form 10-Q filed on June, 8, 2017, as of May 31, 2017, Xactly had 32,140,812 shares of
7  common stock outstanding.  While the exact number of Class members is presently unknown to
8  Plaintiff and can only be ascertained through discovery, Plaintiff believes that there are thousands of
9  members in this Class.  All members of the Class may be identified from records maintained by Xactly
10 or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice
11 similar to that customarily used in securities class actions.

12 30.    There are questions of law and fact which are common to the Class and which
13 predominate over questions affecting any individual Class member.  The common questions include,
14 *inter alia*, the following: (i) whether Defendants solicited stockholder approval of the Proposed
15 Transaction through a materially false or misleading Proxy in violation of federal securities laws;
16 (ii) whether Plaintiff and other Class members will suffer irreparable harm if securities laws violations
17 are not remedied before the vote on the Proposed Transaction; and (iii) whether the Class is entitled to
18 injunctive relief as a result of Defendants' wrongful conduct.

19 31.    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff
20 does not have any interests adverse to the Class.  Plaintiff and the other members of the Class have
21 sustained damages as a result of Defendants' wrongful conduct as alleged herein.

22 32.    Plaintiff will fairly and adequately protect the interests of the Class and has retained
23 competent counsel experienced in litigation of this nature.

24 33.    The prosecution of separate actions by individual members of the Class creates a risk of
25 inconsistent or varying adjudications with respect to individual members of the Class, which could
26 establish incompatible standards of conduct for Defendants.

27
28

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE
SECURITIES EXCHANGE ACT OF 1934

34.     Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

35.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

36.     Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of himself and the Class to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## FURTHER SUBSTANTIVE ALLEGATIONS

*Company Background*

37.     Xactly is a Software-as-a-Service (SaaS) provider of incentive compensation solutions for employee and sales performance management which are designed to optimize employee behavior and align employee goals with company goals.  The Company was founded in 2005.

*The Sale Process*

38.     In preparation for its initial public offering ("IPO") in 2015, J.P. Morgan was engaged as Xactly's financial advisor and the two parties entered into an engagement letter on March 20, 2015. In addition to work on Xactly's IPO, J.P. Morgan was instructed by the Board to explore potential sales of Xactly.

39.     In July 2016, representatives from Vista had an (unsolicited) introductory meeting with Defendant Cabrera and Joseph Consul ("Consul"), the Company's CFO, where they presented information about Vista.

40.     In August 2016, Company management was contacted by Party B regarding a potential combination.  Party B indicated they could potentially submit an offer in October 2016.

41.     On September 2, 2016, J.P. Morgan met with Company management to discuss Xactly's prospects, business, and potentially reaching out to other parties, given Party B's recent interest.

42.     On September 15, 2016, Defendant Cabrera contacted Party B's representatives and they agreed to meet in October.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE
SECURITIES EXCHANGE ACT OF 1934

43.     On September 29, 2016, Defendant Cabrera and Consul had an introductory meeting with Party G, a financial sponsor, at Party G's request, to discuss SaaS industry developments.  During this meeting, Company management and Party G discussed potential collaborations and opportunities between the two parties and Party G relayed interest in continuing such discussions in the future.

44.     On October 20, 2016, Defendant Cabrera and Party B held a conference call in which they scheduled an in person meeting.  On October 31, 2016, Defendant Cabrera, Company management, and Party B met and Party B discussed a potential acquisition of Xactly.  At this meeting, Company management made a preliminary due diligence presentation and over the following weeks, the Company and Party B exchanged various due diligence information.

45.     On November 22, 2016, the Board held a special meeting with Wilson Sonsini Goodrich & Rosati Professional Corporation ("Outside Counsel") and J.P. Morgan.  At this meeting, the Board established a Transactions Committee of the Board of Directions (the "Transactions Committee").  The Transaction Committee included Defendant Cabrera, Defendant Casilli, Defendant Dempsey, Defendant Fry, and Defendant McGregor.

46.     On December 6, 2016, Party B communicated to Defendant Cabrera that it would not be submitting an indication of interest, but that it would reconsider in early 2017.  On December 14, 2016, Party B communicated to Defendant Cabrera additional information regarding its decision not to submit an indication of interest, such as its desire to wait and see Xactly's financial results for the 2016 fiscal year.

47.     On December 13, 2016, the Board met with Outside Counsel and Defendant Cabrera gave an update on his earlier discussion with Party B and the Board discussed potential acquisitions by Xactly.

48.     On February 24, 2017, Defendant Cabrera and Party B had a phone call in which Party B expressed that it was still prioritizing its interest in Xactly and that Party B was interested in conducting additional financial due diligence.  They agreed to schedule a follow-up due diligence meeting a few weeks after this call.  Party B indicated that the earliest it would consider submitting an acquisition proposal was in the second quarter of Xactly's fiscal 2018.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE
SECURITIES EXCHANGE ACT OF 1934

49.    On March 1, 2017, the Company extended their engagement with J.P. Morgan by way of an amendment to their prior engagement letter.    On March 3, 2017, at the direction of the Transactions Committee, J.P. Morgan reached out to a number of additional parties who might consider making an acquisition of Xactly.    Management and the Transactions Committee had decided that additional outreach may motivate Party B to submit a proposal sooner.

50.    During the week of March 6, 2017, at the direction of the Board, J.P. Morgan contacted Party C, Party D, Party E, Party F, Party H, and Party I.    Later in March Party C, Party D, Party F, and Party H indicated to J.P. Morgan that they were not interested at that time.

51.    On March 14, 2017, Defendant Cabrera and Company management met with Party B to provide an update on Xactly's operations and no update was given regarding Party B's prior indication that it would not be able to engage until the second quarter of the Company's fiscal 2018.

52.    On March 16, 2017, Party I contacted J.P. Morgan to express interest in obtaining additional information about the Company, and requested a meeting with Company management.    This requested meeting was scheduled for April 4, 2017.    Party I and the Company negotiated and entered into a mutual confidentiality agreement on March 24, 2017.

53.    On March 19, 2017, Party E informed J.P. Morgan it was not interested in engaging in a transaction with the Company.

54.    On March 23, 2017, the Board held a meeting at which they discussed updated developments relating to the sale efforts and discussed marketplace issues facing the Company, such as price competition and pipeline and calculated billings pressure.    The Board also discussed potential acquisitions that could be made by Xactly.

55.    On March 31, 2017, Party I informed J.P. Morgan that it needed to cancel the scheduled April 4, 2017 meeting in order to focus on other strategic priorities, and it did not indicate interest in rescheduling.

56.    On an unsolicited basis, Vista contacted Xactly on April 11, 2017, and suggested a dinner with Company management, and stressed that 13 of Vista's portfolio companies, in the aggregate, were essentially Xactly's second largest customer.    This dinner occurred with

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934

1  Defendant Cabrera and Vista on April 24, 2017.  They discussed entering a mutual non-disclosure

2  agreement but no proposal was submitted or discussed by Vista at that dinner.

3          57.    On May 1, 2017, the Company and Vista signed a mutual non-disclosure agreement.

4          58.    On May 2, 2017, the Board met and determined not to reach out to additional financial

5  sponsors as they wanted Company management to be able to concentrate on business operations.

6  However, they also determined to continue discussions with certain strategic parties, including Vista.

7  In addition, at this meeting, Company management presented their initial assessment of the recently

8  completed first fiscal quarter of the Company's fiscal 2018, ending April 30, 2017.  After the meeting,

9  at the Board's direction, Company management began preparing two additional projections: (i) the

10 Updated Case (which would incorporate the fourth quarter of fiscal 2017 and the first quarter of fiscal

11 2018 into the FY2018 Original Base Case); and (ii) the Lower Growth Case (which would reflect a

12 conservative analysis of the Company's future performance).

13         59.    On May 4, 2017, Company management presented business, financial, and technical

14 details to Vista at an all-day management presentation hosted by Xactly's Outside Counsel.  Vista

15 conducted various due diligence requests which were addressed over the following week, including

16 during due diligence sessions on May 10 and 11, 2017.

17         60.    On May 22, Defendant Cabrera met with Vista and J.P. Morgan over a dinner meeting

18 at which Vista informed Defendant Cabrera it would send an acquisition proposal that same evening.

19         61.    In the evening of May 22, 2017, Vista sent a written indication of interest to the Board

20 and J.P. Morgan with a per share price of $15.00.  The indication of interest included a draft merger

21 agreement and stated that the proposal would expire on May 29, 2017, at 5:00 p.m. Pacific time.  The

22 indication of interest was not subject to exclusivity prior to the signing of the merger agreement.  Vista

23 again stressed its prior assertion that 13 of their 18 portfolio companies were customers of Xactly and

24 the combined businesses essentially made them Xactly's second largest customer.

25         62.    On May 24, 2017, the Board met with Company management, Outside Counsel, and

26 J.P. Morgan.  Defendant relayed Vista's offer and discussed the status of ongoing discussions with

27 other strategic parties.  At this meeting J.P. Morgan also presented further details of Vista's indication

28 of interest.  The Board concluded that Vista's offer price was attractive, and that due to the lack of

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE
SECURITIES EXCHANGE ACT OF 1934

interest from other parties to date, it was unlikely for there to be an offer from another party with a better price. Regardless, the Board instructed J.P. Morgan to negotiate for a higher price using the three sets of financial projections Company management had provided to J.P. Morgan (FY2018 Original Base Case, the Updated Case, and the Lower Growth Case).

63.    At this same meeting, the Board also discussed that guidance would likely be lowered due to calculated billings at the end of the first quarter of the Company's fiscal 2018, which also might cause a material decline in the Company's stock price. The Board also determined that it would be futile to engage in further outreach to strategic parties and financial partners given the timeline in Vista's indication of interest. With this in mind, the Board instructed J.P. Morgan to only reach out to Party B and Party I to inquire whether they were interested in acquiring Xactly, and no other parties. In addition, the Board instructed management to create another set of projections, the Updated Acquisitions Case (which would include higher revenue growth based on an assumed acquisition of an adjacent business in second quarter of the Company's fiscal 2018).

64.    After the meeting on May 24, the Board convened an independent executive session with Outside Counsel and discussed the importance of management remaining objective throughout the strategic process. With this in mind, the Board agreed to reiterate to management that they refrain from any discussions relating to reinvestment in Xactly or continued employment prior to the signing of any potential transaction. The Board did so following this meeting.

65.    On May 24, 2017, Defendant Cabrera reached out to Party B to connect them with J.P. Morgan. J.P. Morgan and Party B discussed coordinating a follow-up due diligence phone call with the Company. In addition, on this day, J.P. Morgan, at the Board's direction, contacted Party B and Party I to inform them that if they had interest in acquiring the Company, they should express such no later than May 28, 2017.

66.    From May 24, 2017 through May 26, 2017, J.P. Morgan and Vista continued due diligence and negotiations. As directed by Company management, J.P. Morgan relayed the Board's desire that Vista increase its offer price. On May 26, 2017, Vista reiterated that its offer was contingent on signing a transaction by the evening of May 29, 2017.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE
SECURITIES EXCHANGE ACT OF 1934

67.     On May 26, 2017, the Board held a special meeting with Company management, Outside Counsel, and J.P. Morgan where Defendant Cabrera presented an update on the Vista offer and the status of communications with Party B and Party I.  The Board discussed the offer, Vista's recent transaction history, and the level of interest expressed to date from Party B and Party I.  In addition, Outside Counsel recommended seeking a "go shop" provision, and informed the Board that the draft merger agreement contained a customary "fiduciary out" provision.

68.     After the special meeting on May 26, 2017, the Board held an independent executive session where the independent directors determined that the offer from Vista was attractive and in the best interests of Company stockholders.  They also concluded that the Company should continue to attempt to increase the share price offered by Vista.

69.     On May 26, 2017, Defendant Cabrera and Consul held a follow-up call with Party B and updated financial results for the Company were presented.

70.     Later in the day on May 26, 2917, J.P. Morgan was informed by Party I that it would not be submitting an offer for the Company.

71.     In the evening of May 26, 2017, Outside Counsel sent a markup of the merger agreement back to Vista's legal counsel.  Throughout May 27 and May 28, 2017, Outside Counsel, J.P. Morgan, and Vista's legal counsel continued to negotiate the draft merger agreement.

72.     On May 28, 2017, following further check-ins by J.P. Morgan and Party B, Party B indicated they had no interest in the Company at that time and that it would not be submitting an offer.

73.     On May 28, 2017, by late afternoon, Vista reached out to J.P. Morgan and increased its offer price to $15.50 per share on the condition that there would be no "go-shop" provision included in the merger agreement.

74.     In the evening of May 28, 2017, the Board held a special meeting with Company management, Outside Counsel, and J.P. Morgan.  At this meeting Defendant Cabrera informed the Board that none of Company management had engaged in discussions regarding continued employment to date.  J.P. Morgan also informed the Board that Party B and Party I would not be submitting an offer, that Vista rejected a "go-shop" provision and of its belief that Vista would not increase its offer much further.  The Board determined that they would be willing to forego a "go-shop" provision for an

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934

increased offer price and informed J.P. Morgan to negotiate further.   Vista thereafter, increased then communicated their best and final offer price of $15.65.  That evening the Board held a special meeting and unanimously concluded to approve the merger agreement with Vista, after which the Company and Parent executed and agreed to the Merger Agreement.

75.    On the morning of May 30, 2017, Xactly and Vista issued a joint press release on the matter, which stated the following relevant information:

"SAN JOSE, Calif.--(BUSINESS WIRE)-- Xactly (NYSE: XTLY), a leading provider of cloud-based incentive solutions, today announced that it has entered into a definitive agreement to be acquired by Vista Equity Partners ("Vista"), a leading private equity firm focused on investments in software, data and technology-enabled businesses.

Under the terms of the agreement, affiliates of Vista will acquire all outstanding shares of Xactly common stock for a total value of approximately $564 million. Xactly stockholders will receive $15.65 in cash per share, representing an approximately 17% premium to the closing price as of May 26, 2017 and an approximately 31% premium compared to the 3-month volume weighted average price of Xactly's common stock.

"This announcement represents a very positive event for our stockholders and enables Xactly to build upon its successful 12-year history," said Christopher W. Cabrera, founder and CEO of Xactly Corporation. "We are confident that Vista is the ideal partner to accelerate our growth initiatives and enable Xactly to focus on innovation and customer success while forging a new era of incentive compensation management."

"Xactly's market leadership in cloud incentive compensation solutions makes it an ideal addition to the Vista family of companies," said Brian Sheth, Co-Founder and President of Vista Equity Partners. "We are looking forward to bringing Vista's resources and expertise to help drive Xactly's next phase of innovation and growth."

Xactly's headquarters will remain in San Jose. The closing of the transaction is subject to customary closing conditions, including the approval of Xactly's stockholders and antitrust approval in the United States. The transaction is expected to close in the third quarter of the 2017 calendar year.

In a separate press release issued today, Xactly announced preliminary financial results for the first quarter of 2018. Xactly will report its fiscal 2018 first quarter in its Quarterly Report on Form 10-Q. Xactly will not hold a conference call to discuss earnings due to the announced sale of the company.

J.P. Morgan Securities LLC is acting as exclusive financial advisor and Wilson, Sonsini, Goodrich & Rosati, Professional Corporation, is serving as legal advisor to Xactly. Vista's legal advisor is Kirkland & Ellis LLP."

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE
SECURITIES EXCHANGE ACT OF 1934

*The Proxy Misleads Xactly Stockholders by Omitting Material Information*

76.    On June 16, 2017, Xactly filed a materially misleading and incomplete Proxy with the SEC which was designed to convince stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning the process that led up to the execution of the Merger Agreement, including the projected financial information provided to J.P. Morgan by Xactly management to support the rendering of its fairness opinion, the existence of standstill provisions, and information regarding potential conflicts of interest faced by Xactly senior management when leading the search for strategic alternatives that ultimately resulted in execution of the Merger Agreement.

*Potential Conflicts of Interest*

77.    The Proxy contains material misrepresentations and omissions regarding employment negotiations taking place in the lead up to the Merger Agreement.

78.    The Proxy states that on May 28, 2017, Defendant Cabrera informed the Board that none of Company management had engaged in discussions with Vista regarding continued employment. However, the Proxy also stated that, "[c]ertain of [Xactly's] executive officers have had and may continue to have discussions, or may enter into agreements with, Parent or Merger Sub or their respective affiliates regarding employment with, or the right to purchase or participate in the equity of, the Surviving Corporation or one or more of its affiliates." These two statements are at best misleading, as there is no information as to the content, nature, timing nor parties involved in discussions these particular Company executives "have had." Moreover, given that Vista is a private equity buyer, rather than a strategic purchaser, the likelihood is very high that Vista pursued communications concerning its intention to retain management, as such buyers typically do in such transactions.

79.    The Proxy materially misleads Xactly stockholders when it omits material facts concerning communications between Vista and the Board or any Xactly senior management regarding post-transaction retention of Xactly's management and/or directors. The fact that the Proxy states that executive officers have had conversations on this topic but contains no information about said conversations is materially misleading. Moreover, the Merger Agreement explicitly states that at closing, the "Surviving Corporation or one of its Subsidiaries" would continue to employ Xactly's

1  employees for a period of one year.  Such discussions must have occurred while the Proposed

2  Transaction was being negotiated, but are not disclosed in the Proxy.

3       80.     The failure to disclose the content and timing of such discussions materially misleads

4  Xactly stockholders as to the appropriateness of the Board's decision to not conduct any kind of further

5  market check with respect to the merger price, and the potential conflicts of interest faced by Company

6  management and the Board in supporting the merger.

7       81.     The omitted information relating to the timing, content, and parties involved in these

8  communications concerning the retention of Xactly's management and directors would significantly

9  alter the total mix of information that Defendants have disclosed to solicit stockholder approval of the

10  Proposed Transaction.  The conflicts of interests created and fostered by such communications would

11  affect the stockholders' perception and analysis of the entire process and the ultimate fairness of the

12  Proposed Transaction.  Thus the statements in the Proxy, including the statements indicating that

13  executives have had negotiations on continued employment with no further information, are rendered

14  materially misleading by these omissions.

15       82.     The Proxy fails to disclose the amount of compensation J.P. Morgan received for acting

16  as joint lead bookrunner on Xactly's IPO in June 2015.  Full disclosure of investment banker

17  compensation is required due to the central role played by J.P. Morgan in the evaluation, exploration,

18  selection, and implementation of strategic alternatives here.

19       83.     The omission of this information renders the statements made in the following sections

20  of the Proxy false and misleading: (i) "Background of the Merger"; (ii) "Recommendation of the Board

21  of Directors and Reasons for the Merger"; and (iii) "Fairness Opinion of J.P. Morgan Securities LLC."

22  ***Misleading Statements and Omissions Regarding the Company's Financial Projections***

23       84.     The Proxy fails to disclose material information concerning the Company's financial

24  projections relied upon by J.P. Morgan in preparing its fairness opinion.

25       85.     The Proxy discloses two non-GAAP accounting metrics for projected financial

26  information over the years 2017-2030: Adjusted EBITDA and Unlevered Free Cash Flow.  However,

27  providing these non-GAAP metrics without disclosing all line item metrics used to calculate them, or

28  otherwise reconciling the non-GAAP projections to GAAP measures, makes the provided disclosures

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE
SECURITIES EXCHANGE ACT OF 1934

materially incomplete and misleading.  Non-GAAP measures have no universally understood definition and vary widely between companies depending on the needs of management in promoting their own effect on Company performance.

86.     The Proxy fails to disclose interest expense for Company projections for years 2021E to 2030E which prevents the calculation of net income for such years.  Further, the projections fail to otherwise disclose projected net income for years 2021E to 2030E.  Without these measures, cherry-picking the disclosed projections materially misleads Xactly stockholders and renders J.P. Morgan's financial analysis materially incomplete and misleading.

87.     Because of the non-standardized and potentially manipulative nature of non-GAAP measures, when a company discloses information in a proxy that includes non-GAAP financial measures, the company must also disclose comparable GAAP measures and a quantitative reconciliation of forward-looking information pursuant to Regulation G. 17 C.F.R. § 244.100.

88.     Indeed, the SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] In fact, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial metrics that demonstrate the SEC is indeed tightening policy.[2]  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide *any* reconciling metrics that are available without unreasonable efforts.

89.     Thus, the above-referenced line-item projections that have been omitted from the Proxy are precisely the types of "reconciling metrics" that the SEC has recently indicated should be disclosed to render non-GAAP financial projections not misleading to stockholders.

---

[1]     *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

[2]     *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, SEC (May 17, 2016), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934

90.     Defendants' failure to provide Xactly's stockholders with the foregoing material information renders the financial projections and analyses depicted in the Proxy materially incomplete and misleading, and constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder.  The Individual Defendants were aware of their duty to disclose this information, and yet omitted such at least recklessly or negligently.  The material information described above that was omitted from the Proxy takes on actual significance in the minds of Xactly's stockholders in reaching their decision whether to vote in favor of the Proposed Transaction.  Absent disclosure of this material information prior to the vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make an informed decision about whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm for which damages are not an adequate remedy.

91.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

***Existence of Standstill Provisions***

92.     The Proxy discloses that the Company entered into a number of confidentiality agreements with potential merger partners during its search for strategic partners.  For example, the Proxy states that Xactly negotiated and entered into a confidentiality agreement with Party I, but does not disclose any of the terms of this agreement.  Further, the Merger Agreement contains a provision which states that Vista executed a confidentiality agreement dated April 28, 2017.  However, the Proxy is silent as to whether any of these confidentiality agreements contained standstill provisions, and if they did, whether the standstill provisions contained don't-as-don't-waive provisions or other terms that would have contractually forbidden the counterparties during the lead up to the signing of the Merger Agreement from coming forward with a superior offer, or "topping bid," to the Proposed Transaction.

93.     The omission of this information materially misleads Xactly stockholders as to whether counterparties have been inappropriately restricted since the announcement of the Proposed Transaction from coming forward with a higher bid.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE
SECURITIES EXCHANGE ACT OF 1934

## CLAIMS FOR RELIEF

### COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act, Rule 14a-9 Promulgated Thereunder, Against the Individual Defendants and Xactly**

94. Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

95. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Xactly is liable as the issuer of these statements.

96. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

97. The Individual Defendants were at least reckless or negligent in filing the Proxy with these materially misleading statements and omissions.

98. The omissions and misstatements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

99. The Proxy is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

100. By reason of the foregoing, Defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

101. Because of the false and misleading statements in the Proxy, plaintiff and the Class are threatened with irreparable harm.

### COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act Against the Individual Defendants**

102. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934

103.    The Individual Defendants acted as controlling persons of Xactly within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Xactly and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

104.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

105.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy.

106.    By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

107.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' conduct, Plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Declaring that this action is properly maintainable as a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

B.    Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934

it aside or awarding rescissory damages;

D.    Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

E.    Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

F.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

G.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: July 6, 2017                          **LEVI & KORSINSKY LLP**

By: */s/ Rosemary M. Rivas*
Rosemary M. Rivas
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

Donald J. Enright (to be admitted *pro hac vice*)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
1101 30th Street NW, Suite 115
Washington, D.C. 20007
Telephone:(202) 524-4290
Facsimile: (202) 333-2121

*Counsel for Plaintiff Steven DePalo*

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE
SECURITIES EXCHANGE ACT OF 1934

**CERTIFICATION OF PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS**

I, Steven DePalo , declare as to the claims asserted under the federal securities laws, as follows:

1. I have reviewed the Complaint and authorized its filing.

2. I did not purchase the securities that are the subject of this Complaint at the direction of Plaintiffs' counsel or in order to participate in this litigation.

3. I am willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. I currently hold shares of Xactly Corp. My purchase history is as follows:

| Purchase Date | Stock Symbol | Shares Transacted | Price Per Share |
|---|---|---|---|
| 8/14/2015 | XTLY | 500 | 7.5763 |
| 9/01/2015 | XTLY | 500 | 6.6009 |
|  |  |  |  |

5. During the three years prior to the date of this Certification, I have not participated nor have I sought to participate, as a representative in any class action suit in the United States District Courts under the federal securities laws.

6. I have not received, been promised or offered, and will not accept, any form of compensation, directly or indirectly, for prosecuting or serving as a representative party in this class action, except for: (i) such damages or other relief as the Court may award to me as my pro rata share of any recovery or judgment; (ii) such reasonable fees, costs or other payments as the Court expressly approves to be paid to or on behalf of me; or (iii) reimbursement, paid by my attorneys, of actual or reasonable out-of-pocket expenditures incurred directly in connection with the prosecution of this action.

I declare, under penalty of perjury, that the foregoing is true and correct. Executed this July 5, 2017,at Brooklyn, NY.

Name: Steven DePalo

Signed: